**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| BRYCE BALDARE, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>*vs.*<br>DABELLA EXTERIORS LLC; DAMSELFLY IMPROVEMENT LLC d/b/a DABELLA; BLUEBIRD IMPROVEMENT LLC d/b/a DABELLA; and DOES 1-10,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:26-cv-03296 |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, TEXAS TELEMARKETING AND TELEPHONE SOLICITATION STATUTES, AND TEXAS DECEPTIVE TRADE PRACTICES ACT, AND DEMAND FOR JURY TRIAL**

Plaintiff, Bryce Baldare, individually and on behalf of all others similarly situated, by way of this Class Action Complaint against Defendants, DaBella Exteriors LLC ("DaBella Exteriors"), Damselfly Improvement LLC d/b/a DaBella ("Damselfly"), and Bluebird Improvement LLC d/b/a DaBella ("Bluebird") (together, "DaBella," and each, a "DaBella Defendant"), and DOES 1-10 (collectively, "Defendants"), states:

## I. NATURE OF THE ACTION

1. Plaintiff's Class Action Complaint seeks redress, for himself and all others similarly situated, from Defendants, who knowingly and willfully sent him unwanted telemarketing text messages, and then called him after he told them to stop in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq.*, the Federal Communications Commission's implementing regulations, 47 C.F.R. § 64.1200, Tex. Bus. & Com. Code (TBCC) §§ 301.051, 302.101, and 305.053, and, for injunctive relief, the

Texas Deceptive Trade Practices–Consumer Protection Act (DTPA), Tex. Bus. & Com. Code § 17.41, *et seq.*

2. DaBella sells roofing, siding, windows, and other home-improvement services from 68 locations in 27 states. It markets those services by sending text messages, and placing calls, to consumers who, like Plaintiff, listed their telephone numbers on the National Do Not Call Registry to tell solicitors their calls and texts are unwelcome—and it keeps calling them after they tell it to stop.

***A. The TCPA.***

3. In 1991, Congress enacted the TCPA to regulate explosive growth in the telemarketing industry because Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and determined federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

4. The TCPA requires the Federal Communications Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). It also instructs the FCC to:

> compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section.

*Id*. at § 227(c)(1)(A), (E). The FCC complied by establishing company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

5. The FCC found "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id*. at 8765, ¶ 23. However, the FCC recognized an honor system would likely be ineffective and, thus, determined it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id*. at ¶ 24.

6. These regulations, codified at 47 CFR 64.1200(d)(1)-(7), require companies to keep a written policy for maintaining a do-not-call list, train telemarketing personnel on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1)-(3), (6). These policies and procedures prohibit companies from making telemarketing calls unless they have implemented these policies and procedures. *Id*.

7. "Text messages are 'calls' subject to the TCPA, as previously determined by the Commission." *In re Rules and Reguls. Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7965, (FCC July 10, 2015). And a private right of action exists to enforce the TCPA under 47 C.F.R. § 64.1200(d). 47 U.S.C. § 227(c)(5).

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

8. Additionally, a text message that exceeds 160 characters is not transmitted as a single message. Under the GSM-7 character-encoding standard governing SMS

transmissions, such a message is transmitted as multiple concatenated SMS segments of up to 153 characters each, and each segment is separately transmitted to, and delivered on, a recipient's device, even if the recipient's device reassembles and displays the segments as one continuous message. Each segment constitutes a separate "call" and a separate "text message" for TCPA purposes. *See, e.g., Connor v. Servicequick, Inc.*, No. 1:24-cv-02286-CNS-NRN, 2025 U.S. Dist. LEXIS 199578, at *2–*4 (D. Colo. Oct. 8, 2025) (denying motion to dismiss § 227(c)(5) claim where plaintiff alleged a text message exceeding 160 characters was transmitted as multiple concatenated SMS segments and thereby constituted more than one "text message" received within a 12-month period).

9. These requirements are separate but cumulative, which means companies must comply with *both* procedures—namely, company-specific do not call list *and* national "do not call" database regulations (discussed *infra*). Failure to comply with either is a distinct violation of 47 U.S.C. § 227(c). Some requirements mention "residential" telephones, but cellular telephones are also considered "residential." 47 CFR § 64.1200(e).

10. Further, a person or entity is liable under the TCPA for violative calls and texts made on its behalf even if they did not directly dial the calls. *In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the Telephone Consumer*

*Protection Act Rules*, 28 FCC Rcd. at 6574 ¶28.

11. Courts can impose TCPA liability against persons for prohibited calls made on their behalf under several theories including vicarious liability. *Johnson v. Palmer Admin. Servs.*, No. 6:22-cv-00121, 2022 U.S. Dist. LEXIS 206601 (E.D. Tex. Nov. 14, 2022).

***B. National Do Not Call Registry.***

12. The National Do Not Call Registry ("Registry") allows consumers to register their telephone numbers, indicating their desire to not receive solicitations; the registration "must be honored indefinitely, or until it is cancelled by the consumer or the telephone number is removed by the database administrator." 47 C.F.R. § 64.1200(c)(2).

13. The TCPA and implementing regulations forbid initiating telephone solicitations[1] to residential telephone subscribers whose numbers are on the Registry; it provides a private right of action against any entity initiating such calls, or any entity "on whose behalf" such calls are initiated. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

[1] The national Registry and company-specific do-not-call lists are triggered by different regulatory concepts. A "telephone solicitation" is a call/message initiated "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," but the term does not encompass calls to persons with whom the caller has an "established business relationship." 47 C.F.R. § 64.1200(f)(15). Established business relationships form by "voluntary two-way communication," 47 C.F.R. § 64.1200(f)(5), and can be terminated the same way—by asking the caller to stop, 47 C.F.R. § 64.1200(f)(5)(i). "Telemarketing," by contrast, includes calls made for the purpose of encouraging purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 C.F.R. § 64.1200(f)(13). The practical consequence is that companies must maintain specific do-not-call procedures for all telemarketing calls regardless of relationship but need only comply with Registry provisions calling a person with whom it lacks an established business relationship.

***C. Texas Business & Commerce Code.***

14. In Texas, a person who receives a communication that violates the TCPA may sue the originator under TBCC § 305.053, and a seller may not make telephone solicitations to a Texas purchaser without a registration certificate. Tex. Bus. & Com. Code §§ 302.101(a), 305.053(a).

15. A violation of Chapter 302 or Chapter 305 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17," and "[a] public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce" either chapter. *Id.* §§ 302.303, 305.054.

16. Among the DTPA's private remedies is "an order enjoining such acts or failure to act," together with "court costs and reasonable and necessary attorneys' fees." Tex. Bus. & Com. Code § 17.50(b)(2), (d).

17. The Legislature directed that Chapter 302 "be liberally construed and applied to promote its underlying purpose to protect persons and the public against false, misleading, or deceptive practices in the telephone solicitation business." Tex. Bus. & Com. Code § 302.003(a).

18. The Legislature also provided that a claimant's prior recoveries under Chapters 302 and 305 "may not limit recovery in a future legal proceeding in any manner." *Id.* §§ 302.003(b), 305.055.

19. The Texas legislature likewise enacted the DTPA after finding it was necessary to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection. Tex. Bus. & Com. Code § 17.44(a). Consequently, the Legislature expressly mandated that courts liberally construe and

apply the DTPA to promote its underlying purposes. *Id.*

20. Texas "[c]ourts routinely award statutory damages under both the TCPA and TBCC based on the same unwanted telephone calls or texts." *Tatum v. RFG USA Inc.*, No. 6:25-cv-403-JDK-JDL, 2026 U.S. Dist. LEXIS 39386, at *4 (E.D. Tex. Feb. 26, 2026) (cite omitted) (collecting cases); see also, *Thomas v. Zenith Solar*, LLC, 2022 U.S. Dist. LEXIS 202851 (W.D. Tex. Aug. 1, 2022) (same); *Thompson v. Dealer Renewal Servs.*, 2021 U.S. Dist. LEXIS 223424 (N.D. Tex. Nov. 18, 2021) (same).

21. Courts routinely award the full statutory penalty for each solicitation made without a registration certificate. *Tatum, supra* at *4–*5 (overruling Report & Recommendation awarding nominal-damages and instead awarded $5,000 for *each* of thirteen telephone solicitations ($65,000)); *Callier v. Cloud City Com. Capital, Ltd. Liab. Co.*, No. EP-25-CV-00408-KC, 2026 U.S. Dist. LEXIS 178236, *14 (W.D. Tex. Aug. 10, 2026).

22. TBCC § 302.101(a) prohibits a seller from making a telephone solicitation from a location in Texas, or to a purchaser located in Texas, unless the seller holds a registration certificate for the business location from which the solicitation is made. A seller who violates Chapter 302 "is subject to a civil penalty of not more than $5,000 for each violation." *Id.* § 302.302(a).

23. A person who receives a communication that violates the TCPA or its implementing regulations may recover an injunction and the greater of $500 for each violation or his actual damages. Tex. Bus. & Com. Code § 305.053(a)–(b). For a knowing or intentional violation, the court may increase the award to the greater of $1,500 for each violation or three times actual damages. *Id.* § 305.053(c).

## II. PARTIES

24. Bryce Baldare is a natural person.

25. Mr. Baldare is a citizen of Texas who resides in Bexar County, Texas, where he received each communication alleged in this Complaint.

26. DaBella Exteriors is a for-profit limited liability company organized under Oregon law, Oregon Secretary of State Registry No. 77353994.

27. DaBella Exteriors maintains its principal place of business at 3495 NE Aloclek Drive, City of Hillsboro, Washington County, Oregon 97124. Its Oregon Secretary of State registration lists that address as its principal place of business and lists 400 East Anderson Lane, Austin, Texas 78752 only as its mailing address.

28. DaBella Exteriors owns the registered trademarks "DABELLA" and the DaBella butterfly logo, both of which appear on the text message Defendants sent Mr. Baldare. [***Exhibit A***, No. 1.]

29. DaBella Exteriors files Texas franchise-tax reports and markets its services in Texas, but it has never registered with the Texas Secretary of State to transact business in Texas

30. DaBella Exteriors has no registered agent in Texas.

31. DaBella Exteriors nonetheless holds itself out as headquartered in Texas.

32. DaBella's website lists Austin, Texas as its headquarters; DaBella Exteriors gives the Texas Comptroller a mailing address of 400 East Anderson Lane, Austin, Texas 78752; and on October 26, 2026, it admitted in this District that its principal place of business is located at that address. [*Smith v. DaBella Exteriors LLC*, No. 1:26-cv-02355-RP (W.D. Tex. Oct. 26, 2026), ECF No. 8 (Answer ¶ 19).]

33. DaBella Exteriors may be served with process through its registered agent, Corporation Service Company, 1127 Broadway Street NE, Suite 310, Salem, Oregon 97301, or wherever it may be found.

34. Damselfly is a for-profit limited liability company organized under Oregon law.

35. Damselfly is registered with the Texas Secretary of State to transact business in Texas as a foreign limited liability company, Texas Secretary of State File No. 0804579971.

36. Damselfly maintains its principal place of business at 3495 NE Aloclek Drive, City of Hillsboro, Washington County, Oregon 97124.

37. Damselfly does business in Texas under the assumed name "DaBella," for which it filed an assumed name certificate with the Texas Secretary of State on August 9, 2022, listing all Texas counties.

38. Damselfly may be served with process through its registered agent, Northwest Registered Agent LLC, 5900 Balcones Drive, Suite 100, Austin, Texas 78731, or wherever it may be found.

39. Bluebird is a for-profit limited liability company organized under Idaho law.

40. Bluebird is registered with the Texas Secretary of State to transact business in Texas as a foreign limited liability company, Texas Secretary of State File No. 0804242433.

41. Bluebird maintains its principal place of business at 3495 NE Aloclek Drive, City of Hillsboro, Washington County, Oregon 97124.

42. Bluebird does business in Texas under the assumed name "DaBella," for which it filed an assumed name certificate with the Texas Secretary of State on October 22, 2021, listing all Texas counties.

43. Bluebird may be served with process through its registered agent, Northwest Registered Agent LLC, 5900 Balcones Drive, Suite 100, Austin, Texas 78731, or wherever it may be found.

44. DaBella Exteriors, Damselfly, and Bluebird each do business as "DaBella."

45. DaBella's website states that "Damselfly Improvement LLC . . . & DaBella Exteriors LLC is a D/B/A of DaBella," and that "'DABELLA' and the DaBella Butterfly are registered trademarks of DaBella Exteriors LLC."

46. DaBella Exteriors, Damselfly, and Bluebird operate as a single home-improvement business under the DaBella name, and each acted for itself and on behalf of the others in the wrongful conduct alleged in this Complaint.

47. DaBella operates 68 locations in 27 states and markets its home-improvement services in each of them.

48. DOES 1-10 are sued under fictitious names as their true names and capacities are yet unknown. Plaintiff will amend this complaint to insert the true names and capacities of DOES 1-10 once they are ascertained.

49. DOES 1-10 are natural persons and/or entities who personally created, instituted and, with knowledge such practices were contrary to law, acted consistent with, conspired, engaged in, and oversaw the violative policies and procedures used by Defendants and their businesses. DOES 1-10 personally control Defendants' fictitious businesses and engaged in the illegal acts, policies, and practices Defendants used and, thus, are personally liable for all wrongdoing alleged in this Complaint.

50. DOES 1-10 include the persons, not yet known to Plaintiff, who transmitted the September 6, 2026 text message, placed the September 9, 2026 calls, or supplied Mr. Baldare's telephone number to DaBella, each on DaBella's behalf.

## III. JURISDICTION AND VENUE

51. This Court has federal-question jurisdiction over the TCPA claims of Plaintiff and National Do Not Call Registry Class under 28 U.S.C. § 1331. *Mims*, 565 U.S. at 386–87.

52. Supplemental jurisdiction for the state law claims of Plaintiff, the Texas Telemarketing Subclass, Texas Registration Class, and Texas Consumer Call Subclass exists under 28 U.S.C. § 1367.

53. This Court has personal jurisdiction over each DaBella Defendant.

54. DaBella directed the text message and calls alleged here to Mr. Baldare in Texas, to sell him home-improvement services for his Texas home, and Plaintiff's claims arise from those contacts.

55. Damselfly and Bluebird are also registered to transact business in Texas, DaBella maintains offices at 400 East Anderson Lane, Austin, Texas 78752, and DaBella Exteriors has admitted in this District that its principal place of business is at that address.

56. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (c)(2) because every DaBella Defendant is subject to personal jurisdiction in this District with respect to this action and therefore resides here.

57. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred here: Defendants directed their text message and calls to Mr. Baldare in Bexar County, offered him an in-home estimate at his Bexar County home, and he received every communication here.

## IV. FACTUAL ALLEGATIONS

58. Mr. Baldare's telephone number, XXX-XXX-6736, is registered to a cellular telephone service in his name.

59. Mr. Baldare does not have a residential telephone number other than his cellular phone number; he is its only user and he only uses it for residential purposes—*i.e.*, his personal, family, and household matters.

60. Mr. Baldare pays for his cellular telephone service with personal funds; it is the primary way he communicates with his friends and family.

61. Mr. Baldare's cellular telephone number is unassociated with a business.

62. On October 2, 2024, Mr. Baldare registered his cellular telephone number ending in 6736 on the Registry to obtain solitude from unwanted telemarketing calls and text messages. The Registry confirmed the registration to him in writing on September 11, 2026, and the number has remained registered since.

63. DaBella sells roofing, siding, windows, and other home-improvement services to homeowners.

64. DaBella markets those services by sending text messages and placing telephone calls to consumers who never asked to hear from it, including consumers whose numbers are registered on the National Do Not Call Registry.

65. On September 6 and 9, 2026, Defendants sent Mr. Baldare a text message and placed two telephone calls to his cellular telephone number ending in 6736. A chronological compilation of those communications, together with Mr. Baldare's reply, is attached as ***Exhibit A***, and excerpts of Mr. Baldare's AT&T usage records showing Defendants' calls are attached as ***Exhibit B***.

66. Defendants used two telephone numbers: (503) 563-2370, a Portland, Oregon-area number, for the text message; and (702) 267-6355, a Las Vegas, Nevada-area number, for the calls. [***Exhibit A***, Nos. 1–3.]

67. Before Defendants' text message on September 6, 2026, Mr. Baldare had never visited DaBella's website, contacted DaBella, given DaBella his telephone number, asked DaBella for an estimate, or done business with DaBella.

68. Mr. Baldare never submitted a website form or quote request to DaBella or any home-improvement lead generator, and he never authorized anyone to request solicitations for him.

69. Defendants obtained his first name and cellular number from a source other than Mr. Baldare.

70. On Sunday, September 6, 2026, at 10:01 a.m., Defendants sent Mr. Baldare a text message from (503) 563-2370. [***Exhibit A***, No. 1.]

71. The message consisted of an image of DaBella's green butterfly logo and "DaBella" wordmark, followed by this text (***Exhibit A***, No. 1):

> Hi Bryce, this is DaBella. I see you are interested in a Home Improvement estimate. I can get you scheduled for a free in-home estimate tomorrow. I have a 2pm, or 6pm?
>
> Reply STOP to opt out of text messages. Data & msg rates may apply.

72. Defendants transmitted the image and the text to Mr. Baldare separately. Mr. Baldare's phone displayed the image with its own 10:01 a.m. time stamp and its own save button. [***Exhibit A***, No. 1.]

73. Under the GSM-7 character-encoding standard governing SMS transmission, a text message of up to 160 characters is transmitted as a single SMS message, whereas a message exceeding 160 characters is transmitted as multiple concatenated SMS segments

of up to 153 characters each. Each such segment is separately transmitted to, and delivered on, the recipient's cellular device, even though the recipient's device may reassemble and display the segments as a single continuous message.

74. The text portion of Defendants' September 6 message contains more than 230 characters, including spaces and line breaks. It therefore exceeded 160 characters and was transmitted to Mr. Baldare as two concatenated SMS segments. [***Exhibit A***, No. 1.]

75. In all, Defendants' September 6 message reached Mr. Baldare as three separate transmissions: the image and two SMS segments.

76. Each transmission Defendants sent Mr. Baldare was separately transmitted and delivered and constitutes a separate "call" and a separate "text message" within the meaning of the TCPA and its implementing regulations. *See, e.g.*, *Connor*, 2025 U.S. Dist. LEXIS 199578, at *2–*4.

77. Mr. Baldare was not interested in a home-improvement estimate and had never asked for one. DaBella's statement that it could "see" he was "interested in a Home Improvement estimate" was false.

78. DaBella's message was a form script. It addressed Mr. Baldare by first name only, asserted an interest he never expressed, offered two fixed appointment times, and closed with stock opt-out language. [***Exhibit A***, No. 1.]

79. Defendants' text message did not provide the name of any individual sender, and it did not provide a telephone number or address at which DaBella could be contacted. It identified the sender only as "DaBella," which is not the legal name of any Defendant. [***Exhibit A***, No. 1.]

80. Defendants sent their text message at 10:01 a.m. on a Sunday, before 12 noon. [***Exhibit A***, No. 1.]

81. Forty-two minutes later, at 10:43 a.m., Mr. Baldare replied (***Exhibit A***, R-1):

> STOP. I am registered on the National Do Not Call Registry and never requested a quote. Revoke my number from your systems immediately. Any further contact will be documented and reported to the FTC as a TCPA violation.

82. That reply told DaBella that Mr. Baldare objected to any further contact, that his number was on the Registry, and that he never requested a quote. It also ended any established business relationship DaBella could claim. 47 C.F.R. § 64.1200(f)(5)(i).

83. Defendants called him anyway. Three days later, on Wednesday, September 9, 2026, Defendants called Mr. Baldare from (702) 267-6355 at 10:09 a.m. He missed the call. [***Exhibit A***, No. 2; ***Exhibit B***.]

84. Mr. Baldare returned that call at 10:30 a.m. only to identify who was calling him; the call lasted seven seconds. [***Exhibit A***, No. 2; ***Exhibit B***.]

85. At 2:32 p.m. the same day, Defendants called Mr. Baldare again from (702) 267-6355, and he answered. The call lasted six minutes. [***Exhibit A***, No. 3; ***Exhibit B***.]

86. During that call, DaBella's representative offered DaBella's home-improvement services, claimed that Mr. Baldare had gone online and requested a quote, and told him that DaBella had obtained his "lead" from a source called "XACT OP CO."

87. Mr. Baldare had not gone online or requested a quote from DaBella or anyone else. He did not agree to an estimate, did not consent to further contact, and did not withdraw his September 6 request.

88. Defendants' calls came after Mr. Baldare told DaBella to stop contacting him, and after his number had been registered on the Registry for more than twenty-three months. [***Exhibit A***.]

89. Defendants never had an "established business relationship" with Mr. Baldare within the meaning of 47 C.F.R. § 64.1200(f)(5). He never purchased anything from DaBella or transacted business with it, and his September 6 request would have ended any relationship. *Id.* § 64.1200(f)(5)(i).

90. Mr. Baldare never gave Defendants prior express invitation or permission, evidenced by a signed, written agreement, to call or text him. *See* 47 C.F.R. § 64.1200(c)(2)(ii).

91. Defendants' text message and calls were sent or made to encourage Mr. Baldare to purchase DaBella's home-improvement services and are "telemarketing" and an "advertisement" within the meaning of 47 C.F.R. § 64.1200(f)(1) and (13).

92. Defendants' text messages and calls to Plaintiff were not for emergency purposes.

93. Defendants caused Mr. Baldare actual harm and cognizable legal injury including, *inter alia*, aggravation, nuisance, invasions of privacy, and the time he spent receiving, reviewing, and responding to Defendants' text message and calls. Their messages reached his personal phone on a Sunday morning, and their calls continued after he told them to stop.

94. Baldare is a "person" as defined by 47 U.S.C. § 153(39).

95. Baldare is a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

96. Each DaBella Defendant is a "person" within the meaning of 47 U.S.C. § 153(39).

97. Each DaBella Defendant is a "seller" within the meaning of 47 C.F.R. § 64.1200(f)(10) and Tex. Bus. & Com. Code § 302.001, and a "telemarketer" within the meaning of 47 C.F.R. § 64.1200(f)(12).

98. Each DaBella Defendant is liable for the text message and calls whether it initiated them itself or through persons acting on its behalf. The text message identified DaBella as the seller and offered Mr. Baldare specific appointment times for a DaBella estimate, and the caller on September 9 spoke for DaBella and promoted its services. *See* 47 U.S.C. § 227(c)(5); *In re Joint Petition Filed by DISH Network, LLC*, 28 FCC Rcd. at 6574 ¶ 28.

99. Defendants' text message and calls to Mr. Baldare's cellular telephone constitute "telephone solicitations" within the meaning of 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(15) because Defendants initiated them to encourage him to purchase DaBella's home-improvement services.

100. DaBella did not hold a registration certificate under Chapter 302 of the Texas Business and Commerce Code for any business location from which they transmitted telephone solicitations to Mr. Baldare.

101. The Texas Secretary of State's telephone-solicitation registration records contain no registration for DaBella, for any seller doing business as "DaBella," or for DaBella's Austin or Hillsboro, Oregon business addresses.

102. No DaBella Defendant holds a registration certificate under Chapter 302 today, and DaBella continues to market its home-improvement services to Texas citizens.

103. Defendants' violations were knowing and willful. DaBella's own text message told Mr. Baldare to "Reply STOP to opt out." He did, and he told DaBella his number was on the Registry; three days later, Defendants called him twice. [***Exhibit A***.]

104. Mr. Baldare and the members of the Classes are therefore entitled to recover statutory and treble damages; civil penalties; a permanent injunction against Defendants' future telemarketing violations; and reasonable attorneys' fees and costs.

## V. CLASS ACTION ALLEGATIONS

### *A. The Classes.*

105. Mr. Baldare brings this action under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), individually and on behalf of the following classes (together, the "Classes"):

> **National Do Not Call Registry Class:** All persons in the United States who, from four years before the filing of this Complaint through the date of class certification, *(i)* received more than one telephone call or text message within any 12-month period from or on behalf of DaBella, *(ii)* to promote DaBella's goods or services, *(iii)* at a residential or cellular telephone number that had been registered on the National Do Not Call Registry for at least 31 days.
>
> **Texas Telemarketing Subclass:** All members of the National Do Not Call Registry Class who received the calls or text messages described in that definition while located in Texas.
>
> **Texas Registration Class:** All persons who, while located in Texas and while DaBella did not hold a registration certificate under Tex. Bus. & Com. Code § 302.101 for the business location from which the call or text message was made, received from or on behalf of DaBella, to promote DaBella's goods or services, *(i)* a telephone call from four years before the filing of this Complaint through the date of class certification, or *(ii)* a text message from September 1, 2025 through the date of class certification.
>
> **Texas Consumer Call Subclass:** All members of the Texas Registration Class who received the call or text message at a residential or cellular telephone number used for personal, family, or household purposes.

106. Membership in the Texas Registration Class and the Texas Consumer Call Subclass does not depend on whether a member's number was registered on the National Do Not Call Registry.

107. Excluded from the Classes are Defendants; their parents, subsidiaries, affiliates, officers, directors, and employees; persons who gave DaBella prior express invitation or permission, evidenced by a signed, written agreement, to call or text them at the number at issue; for the National Do Not Call Registry Class and the Texas Telemarketing Subclass only, persons with whom DaBella had an unterminated established business relationship when it called or texted them; counsel for the parties; and the judge assigned to this action and the judge's immediate family.

108. Plaintiff may modify these definitions as discovery warrants.

***B. Numerosity.***

109. Each Class is so numerous that joinder of all members is impracticable. DaBella markets its home-improvement services from 68 locations in 27 states, through a texting system that inserts each consumer's first name into a form script and offers fixed appointment times, followed by calls from out-of-state numbers. [***Exhibit A***.] Each Class has at least hundreds of members.

110. The members of each Class are ascertainable from Defendants' records of the numbers they called and texted and the dates and content of those communications, together with the National Do Not Call Registry and carrier records.

***C. Commonality.***

111. Questions of law and fact common to the Classes include: *(i)* whether Defendants called or texted numbers registered on the National Do Not Call Registry; *(ii)* whether Defendants scrubbed their calling and texting lists against the Registry; *(iii)* whether Defendants obtained prior express invitation or permission, evidenced by a signed, written agreement, before calling or texting; *(iv)* whether DaBella held a registration certificate under Chapter 302 for the business locations from which it

solicited Texas purchasers; *(v)* whether Defendants' calls and text messages provided the information 47 C.F.R. § 64.1200(d)(4) and Tex. Bus. & Com. Code § 301.051(b)(1) require; *(vi)* whether Defendants made calls or sent text messages before 12 noon on a Sunday; *(vii)* whether each SMS segment is a separate call and violation; *(viii)* whether Defendants' violations were willful or knowing; and *(ix)* the proper measure of statutory damages, civil penalties, and injunctive relief.

***D. Typicality.***

112. Mr. Baldare's claims are typical of the claims of the Classes. Like their members, he received DaBella's telemarketing at a residential number registered on the Registry without having given written permission, and he was solicited in Texas while DaBella held no Chapter 302 registration certificate. His claims arise from the same practices and rest on the same legal theories.

***E. Adequacy.***

113. Mr. Baldare will fairly and adequately protect the interests of the Classes. He has no interest antagonistic to theirs, and he has retained counsel experienced in TCPA and consumer class litigation—Andrew T. Thomasson, Zachary Z. Zermay, and Francesca A. Di Troia of KRW Lawyers—whom he asks the Court to appoint as class counsel under Rule 23(g).

***F. Predominance and Superiority.***

114. Common questions predominate over any individual questions. Defendants' liability turns on their own uniform practices—how they obtained numbers, whether they scrubbed them against the Registry, and whether DaBella registered under Chapter 302—each provable with Defendants' own records. Statutory damages and civil penalties are fixed or capped for each violation.

115. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Each member's statutory recovery is small compared with the cost of individual litigation; class treatment avoids inconsistent results and conserves the resources of the parties and the Court; and this action presents no unusual difficulties of management.

***G. Injunctive and Declaratory Relief.***

116. Defendants have acted or refused to act on grounds that apply generally to each Class—texting and calling numbers on the Registry and soliciting Texas purchasers without a registration certificate—so final injunctive and corresponding declaratory relief is appropriate for each Class as a whole. Fed. R. Civ. P. 23(b)(2).

***H. Hybrid Certification.***

117. Plaintiff seeks hybrid certification: certification of each Class under Rule 23(b)(2) for injunctive and corresponding declaratory relief, and under Rule 23(b)(3) for statutory damages, civil penalties, and other monetary relief. In the alternative, Plaintiff seeks certification of particular issues under Rule 23(c)(4).

## VI. COUNT ONE: VIOLATIONS OF THE TCPA'S DO-NOT-CALL PROVISIONS, 47 U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200(c)(2)

***(Against All Defendants)***

118. The preceding Factual Allegations and Class Action Allegations are incorporated by reference.

119. Defendants violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by initiating more than one telephone solicitation within a 12-month period—a text message and two telephone calls—to Mr. Baldare's cellular telephone number, which has been registered on the National Do Not Call Registry since October 2, 2024. [***Exhibits A, B***.]

120. Mr. Baldare's cellular telephone number is a residential number for purposes of these rules. 47 C.F.R. § 64.1200(e).

121. Defendants committed the same violations against each member of the National Do Not Call Registry Class.

122. Defendants' TCPA violations were willful and knowing, and at a minimum negligent.

123. Mr. Baldare and each Class member are entitled to an award of $500 in statutory damages under 47 U.S.C. § 227(c)(5)(B) for each violation.

124. Because Defendants' violations were willful or knowing, the Court may increase the award to not more than $1,500 for each violation. 47 U.S.C. § 227(c)(5).

125. Each transmission Defendants sent while Mr. Baldare's number was registered on the National Do Not Call Registry, including each SMS segment, constitutes a separate "text message" for purposes of 47 U.S.C. § 227(c)(5).

126. Defendants' September 6 text message, transmitted as an image and two SMS segments, and their two calls therefore constitute five (5) violations of § 227(c) and 47 C.F.R. § 64.1200(c)(2) as to Mr. Baldare. *See, e.g.*, *Connor*, 2025 U.S. Dist. LEXIS 199578, at *2–*4. Alternatively, Defendants' three communications constitute three (3) violations.

127. Mr. Baldare and the Class members are also entitled to an injunction prohibiting Defendants from calling or texting numbers registered on the National Do Not Call Registry. 47 U.S.C. § 227(c)(5)(A).

## VII. COUNT TWO: VIOLATIONS OF TEX. BUS. & COM. CODE § 305.053

(By Plaintiff and the Texas Telemarketing Subclass Against All Defendants)

128. The preceding Factual Allegations and Class Action Allegations are incorporated by reference.

129. Mr. Baldare and each member of the Texas Telemarketing Subclass received communications from Defendants that violated 47 U.S.C. § 227 and its implementing regulations, as alleged in Count One; thus, they are entitled to:

129.1. a permanent injunction enjoining Defendants' further violations, Tex. Bus. & Com. Code § 305.053(a)(1);

129.2. the greater of $500 for each violation or their actual damages, *id.* § 305.053(b); and

129.3. for each violation Defendants committed knowingly or intentionally, the greater of $1,500 or three times their actual damages, *id.* § 305.053(c).

130. Each transmission, including each SMS segment, and each call that violated the TCPA is a separate "violation" within the meaning of Tex. Bus. & Com. Code § 305.053, such that Defendants committed five (5) violations of § 305.053 as to Mr. Baldare. Alternatively, Defendants' three communications constitute three (3) violations.

## VIII. COUNT THREE: VIOLATIONS OF TEX. BUS. & COM. CODE § 305.053 FOR FAILURE TO IDENTIFY THE CALLER—47 C.F.R. § 64.1200(d)(4)

*(Against All Defendants)*

131. The preceding Factual Allegations and Class Action Allegations are incorporated by reference.

132. A person or entity making any call for telemarketing purposes "must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at

which the person or entity may be contacted." 47 C.F.R. § 64.1200(d)(4).

133. Defendants' September 6 text message was a call for telemarketing purposes. It did not provide the name of the individual caller or a telephone number or address at which DaBella could be contacted, and it therefore violated 47 C.F.R. § 64.1200(d)(4). [***Exhibit A***, No. 1.]

134. Defendants sent the members of the Texas Telemarketing Subclass the same form text messages, which likewise omitted that information.

135. Section 64.1200(d)(4) is a regulation adopted under 47 U.S.C. § 227. Mr. Baldare and each member of the Texas Telemarketing Subclass therefore received communications that violated a regulation adopted under 47 U.S.C. § 227 and are entitled to:

135.1. a permanent injunction enjoining Defendants' further violations, Tex. Bus. & Com. Code § 305.053(a)(1);

135.2. the greater of $500 for each violation or their actual damages, *id.* § 305.053(b); and

135.3. for each violation Defendants committed knowingly or intentionally, the greater of $1,500 or three times their actual damages, *id.* § 305.053(c).

136. Each transmission, including each SMS segment, that failed to provide the required information is a separate violation, such that Defendants committed three (3) violations of 47 C.F.R. § 64.1200(d)(4), actionable under Tex. Bus. & Com. Code § 305.053, as to Mr. Baldare.

## IX. COUNT FOUR: VIOLATIONS OF TEX. BUS. & COM. CODE § 302.101

***(Against All Defendants)***

137. The preceding Factual Allegations and Class Action Allegations are incorporated by reference.

138. Each DaBella Defendant is a "seller," and each of Defendants' text messages and calls was a "telephone solicitation," within the meaning of Tex. Bus. & Com. Code § 302.001, which defines a telephone solicitation to include "a transmission of a text or graphic message." *Id.* § 302.001(7).

139. Defendants violated Tex. Bus. & Com. Code § 302.101(a) by making telephone solicitations to Mr. Baldare and each member of the Texas Registration Class, purchasers located in Texas, without holding a registration certificate for the business location from which they made them.

140. Section 302.101(a) applies to every telephone solicitation of a purchaser located in Texas, whether or not the purchaser's number is registered on the National Do Not Call Registry.

141. No exemption under Subchapter B of Chapter 302 applies to Defendants, who bear the burden of proving any exemption they claim. *Id.* § 302.051(a).

142. Each transmission, including each SMS segment, and each call is a separate telephone solicitation and a separate violation, such that Defendants committed five (5) violations of Chapter 302 as to Mr. Baldare. Alternatively, Defendants' three communications constitute three (3) violations.

143. Mr. Baldare and each member of the Texas Registration Class are entitled to a civil penalty of up to $5,000 for each violation. Tex. Bus. & Com. Code § 302.302(a); *Tatum*, 2026 U.S. Dist. LEXIS 39386, at *4–*5; *Callier*, 2026 U.S. Dist. LEXIS 178236, at *14.

144. They are also entitled to recover all reasonable costs of prosecuting this action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. Tex. Bus. & Com. Code § 302.302(d).

145. They may also enforce Chapter 302 through the DTPA's injunctive remedy, as alleged in Count Six. Tex. Bus. & Com. Code § 302.303(b).

## X. COUNT FIVE: VIOLATIONS OF TEX. BUS. & COM. CODE § 301.051

***(Against All Defendants)***

146. The preceding Factual Allegations and Class Action Allegations are incorporated by reference.

147. Mr. Baldare and each member of the Texas Consumer Call Subclass are "consumers," and DaBella's home-improvement services are a "consumer good or service," within the meaning of Tex. Bus. & Com. Code § 301.001(2)–(3).

148. Each DaBella Defendant is a "telephone solicitor," and Defendants' text message and calls were "consumer telephone call[s]," within the meaning of Tex. Bus. & Com. Code § 301.001(4)–(5): unsolicited calls made to a residential telephone number to solicit the sale of a consumer good or service.

149. No exception in Tex. Bus. & Com. Code § 301.051(a) applies. Defendants did not contact Mr. Baldare in response to his express request, in connection with an existing debt or contract, or as a consumer with whom they had a prior or existing business relationship.

150. Defendants violated Tex. Bus. & Com. Code § 301.051(b)(1) because their text message did not identify an individual telephone solicitor by name. [***Exhibit A***, No. 1.]

151. Defendants violated Tex. Bus. & Com. Code § 301.051(b)(2) because they sent the text message at 10:01 a.m. on a Sunday, before 12 noon. [***Exhibit A***, No. 1.]

152. Defendants committed the same violations against the Texas Consumer Call Subclass members.

153. Mr. Baldare and members of the Texas Consumer Call Subclass were injured by those violations, including by the invasion of their privacy, aggravation, nuisance, and the time spent receiving, reviewing, and responding to Defendants' messages and calls.

154. Mr. Baldare and each Texas Consumer Call Subclass member are entitled to recover their damages, together with reasonable attorney's fees and court costs. Tex. Bus. & Com. Code § 301.104.

## XI. COUNT SIX: INJUNCTIVE RELIEF UNDER THE TEXAS DECEPTIVE TRADE PRACTICES ACT THROUGH TEX. BUS. & COM. CODE § 302.303

***(Against All Defendants)***

155. The preceding Factual Allegations and Class Action Allegations are incorporated by reference.

156. Each violation of Chapter 302 alleged in Count Four is a false, misleading, or deceptive act or practice under Subchapter E of Chapter 17, and Mr. Baldare and the members of the Texas Registration Class may use the DTPA's private remedies to enforce Chapter 302. Tex. Bus. & Com. Code § 302.303(a)–(b).

157. Defendants committed those acts in "trade" and "commerce" by advertising and offering home-improvement services. Tex. Bus. & Com. Code § 17.45(6).

158. Defendants' deceptive acts were a producing cause of actual damages to Mr. Baldare and the members of the Texas Registration Class, including the invasion of their privacy, aggravation, nuisance, and the time they spent receiving, reviewing, and responding to Defendants' messages and calls.

159. No DaBella Defendant held a registration certificate when Defendants solicited Mr. Baldare, and none holds one today. Unless enjoined, Defendants will continue to make telephone solicitations to purchasers located in Texas without the registration certificate Chapter 302 requires.

160. This Count seeks injunctive relief only. Mr. Baldare and the Texas Registration Class do not seek damages under Tex. Bus. & Com. Code § 17.50(b)(1).

161. Mr. Baldare and the members of the Texas Registration Class are therefore entitled to:

161.1. an order enjoining Defendants from making telephone solicitations to purchasers located in Texas unless they hold a registration certificate for the business location from which each solicitation is made, Tex. Bus. & Com. Code § 17.50(b)(2); and

161.2. court costs and reasonable and necessary attorneys' fees, *id.* § 17.50(d).

## XII. PRAYER FOR RELIEF.

162. WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests the Court enter judgment in their favor and against the Defendants, jointly and severally, as follows:

162.1. Certifying the National Do Not Call Registry Class, the Texas Telemarketing Subclass, the Texas Registration Class, and the Texas Consumer Call Subclass under Federal Rule of Civil Procedure 23(b)(2) and (b)(3), appointing Plaintiff as class representative, and appointing his counsel as class counsel under Rule 23(g);

162.2. Finding Defendants' conduct and actions, as complained of, violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) and (d)(4);

162.3. Finding Defendants' conduct and actions, as complained of, violated Tex. Bus. & Com. Code §§ 301.051, 302.101, and 305.053, and their violations of Chapter 302 constituted false, misleading, or deceptive acts or practices under Tex. Bus. & Com. Code § 302.303;

162.4. Awarding injunctive and other equitable relief as necessary to protect Plaintiff and members of the Classes from Defendants engaging in future abuse and unlawful conduct as complained of in this lawsuit;

162.5. Enjoining Defendants, under Tex. Bus. & Com. Code § 17.50(b)(2), from making telephone solicitations to purchasers located in Texas unless they hold a registration certificate for the business location from which each solicitation is made;

162.6. Awarding statutory damages on each cause of action under 47 U.S.C. § 227(c)(5) and Tex. Bus. & Com. Code § 305.053;

162.7. Awarding treble damages for Defendants' willful, knowing, or intentional violations;

162.8. Awarding civil penalties of up to $5,000 for each violation of Chapter 302 under Tex. Bus. & Com. Code § 302.302(a);

162.9. Awarding damages under Tex. Bus. & Com. Code § 301.104;

162.10. Awarding Pre- and Post-Judgment interest;

162.11. Awarding court costs, investigation costs, and reasonable attorneys' fees under Tex. Bus. & Com. Code §§ 17.50(d), 301.104, and 302.302(d); and

162.12. Such other and further relief the Court deems just and proper.

## XIII. DEMAND FOR JURY TRIAL.

163. Plaintiff, individually and on behalf of the Classes, demands a trial by jury on all issues so triable. Fed. R. Civ. P. 38(b).

*****

Respectfully submitted,

*s/ Andrew T. Thomasson*

Date: November 25, 2026

Andrew T. Thomasson (NJ No. 048362011)
Zachary Z. Zermay (SBN 24151597)
Francesca A. Di Troia (SBN 24097596)
KRW LAWYERS
19122 US Hwy 281 N, Suite 324
San Antonio, Texas 78258
Telephone: (210) 490-4357
Andrew@KRWlawyers.com
Zach@KRWlawyers.com
Francesca@KRWlawyers.com

*Attorneys for Plaintiff, Bryce Baldare*